IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 4:05-CR-402 |
| | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| JOHN RIGAS and TIMOTHY RIGAS, | : | Magistrate Judge William I. Arbuckle |
| | : | |
| Defendants | : | |

**MEMORANDUM**

October 31, 2011

## 1. BACKGROUND

On October 6, 2005, a grand jury sitting in the Middle District of Pennsylvania returned an indictment against defendants, John Rigas and Timothy Rigas, charging each of them with a single count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and three counts of tax evasion in violation of 26 U.S.C. § 7201. Thereafter, the grand jury returned a superseding indictment (Document # 94), charging each of the defendants with one count of conspiracy to defraud in violation of 18 U.S.C. § 371 and four counts of tax evasion covering the years 1998 to 200 in violation of 26 U.S.C. § 7201. The defendants, former chief officers of Adelphia Communications Corporation ("Adelphia"), are alleged to have participated in a conspiracy to divert funds from Adelphia, their former family business, without paying income taxes. The

transactions that form the basis of the tax evasion charges generally involve purchases of Adelphia securities by the defendants between 1998 and 2000. Some of the purchases were made with funds jointly borrowed by Adelphia entities and Rigas entities pursuant to co-borrowing agreements. In addition, the defendants are alleged to have improperly diverted funds from Adelphia's cash management system.

In addition to the conspiracy and tax fraud charges at issue in this case, in July 2004, the Rigas' were found guilty of conspiracy and multiple counts of securities and bank fraud after an eighteen week jury trial in the Southern District of New York. The New York prosecution came on the heels of Adelphia's collapse into bankruptcy in 2002 after auditors reported that off-books companies controlled by the Rigas' had accumulated nearly $2.5 billion in undisclosed bank loan debt. This debt was hidden through allegedly fraudulent accounting practices.

On August 5, 2011, defendants filed a "Motion for Issuance of Subpoenas for Production of Documents in Advance of Trial Under Federal Rule of Criminal Procedure 17(c)." (Document # 166). On August 15, 2011, the United States filed its opposing brief. (Document # 170). Defendants were given an opportunity to file a reply brief by September 8, 2011, but filed it late on September 12, 2011. (Document # 180). In the interest of the administration of justice, the court will accept this late brief.

The defendants are requesting subpoenas for documents directed toward three sets of non-parties: Buchannan Ingersoll & Rooney, P.C. ("BIPC"), The Adelphia Recovery Trust ("ART"); and to a group of non-litigants collectively referred to as the "Adelphia Parties," which is comprised of the Adelphia Communications Corporation; Fried, Frank, Harris, Shriver & Jacobson LLP; Boies, Schiller & Flexner, LLP; Covington & Burling, LLP; Adelphia's former independent directors: Erland Kailbourne, Les Gelber, Dennis Coyle and Peter Metros; and Adelphia's Replacement Independent Directors: Rodney W. Cornelius and Anthony T. Kronman.

For the following reasons we will grant the motion in part and deny it in part.

**2. DISCUSSION**

The issuance of a subpoena is governed by Federal Rule of Criminal Procedure 17. A party may make a motion to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c). "Only materials that are 'admissible as evidence' are subject to subpoena." United States v. Cuthbertson, 651 F.2d 189, 192 (3d Cir. 1981) citing Bowman Dairy Co. v. United States, 341 U.S. 214, 221, 71 S. Ct. 675, 95 L.Ed. 879 (1951). "Impeachment material, which is not admissible for any evidentiary purpose prior to trial, is not subject to subpoena under Rule 17 until after testimony at trial.

United States v. Tillman, 2009 U.S. Dist. LEXIS 96922, *2 WL CITE, (W.D. Pa. October 20, 2009) (Lancaster, J), citing Cutherbertson, 651 F.2d at 195 ("naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule." Information sought for the sole purpose of impeachment is not evidentiary, and therefore not subject to pretrial disclosure under Rule 17(c). See id. "Rule 17(c) is not designed to be used as a broad discovery tool. Id. "Instead, the requesting party must show, *inter alia*, "that the application is made in good faith and is not intended as a general 'fishing expedition." Cutherbertson, 651 F.2d at 145, quoting United States v. Nixon, 418 U.S. 683, 699-700, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

**Standing to Quash**

As a threshold matter, the Rigas' argue that the Government has no standing to quash the subpoenas. "A third party, in this case the Government, has standing to quash a subpoena if it infringes on their legitimate interests." United States v. Segal, 276 F. Supp 2d 896, 899 (N.D. Ill. August 8, 2003) (Castillo, J.), citing United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982) (holding that the prosecution had a legitimate interest in quashing a defense subpoena directed toward government witnesses and those reasons included "preventing undue lengthening of the trial, undue harassment of its witnesses, and prejudicial over-

emphasis on [the witness's] credibility"). "One important question that Courts have considered in deciding the issue of standing is "whether the subpoenaed party joins in the Government's motion to quash." United States v. Vasquez, 258 F.R.D. 68, 71 (E.D. NY May 20, 2009) (Spatt, J), quoting United States v. Nektalov 2004 U.S. Dist. LEXIS 13127, 2004 WL 1574721, at *1 (S.D. NY 2004). The government apparently has had some communication with at least some of the subpoenaed parties, but no formal motion to join in the motion to quash has been filed.

**Requested subpoenas to the Adelphia Parties**

We find that the government has a legitimate interest in quashing the motion directed toward the Adelphia Parties to avoid re-litigating issues already decided. Many of the documents defendants seek to subpoena are subject to a protective order issued by Judge Jones on June 14, 2011. (Document # 150). Judge Jones granted the request of the United States and ordered that no further discovery be allowed relating to the subject of the Rigas' Motion to Dismiss the Indictment on Fifth and Sixth Amendment grounds. (Document # 70-3). The defendants asserted in their motion to dismiss the indictment that the Government interfered with their right to counsel in the Southern District of New York prosecution by threatening Adelphia with indictment if it supported the Rigas' in any fashion, including payment of the Rigas' legal fees. Judge Jones denied the motion to

dismiss, because all of the activities the Rigas' complained of occurred prior to the instant action, and the defendants made no argument that prosecutors interfered with the instant prosecution. In addition to denying the motion to dismiss, Judge Jones also granted a motion for protective order, stating that "no further discovery into this area is permitted." (Document # 150 at 7).

As evidenced by the government's 'black-line' version of the subpoena, (Document #170, exhibit 1) much the subpoena is almost identical to the discovery request the Rigas' demanded of the government -- the subject of Judge Jones' protective order. As a result, we will grant the government's motion to quash the subpoena. The Rigas' may submit a carefully tailored new request for subpoena to the court, which eliminates the items that are subject to the previously issued protective order by Judge Jones.

**Requested subpoena to Adelphia Recovery Trust**

The government also has a legitimate interest in quashing the motion directed toward ART. In the Court's view the defense is trying to subpoena evidence that is inadmissible or may only be admissible for impeachment purposes.

The government and defendants both acknowledge that some, if not all, of the information requested by the subpoena is subject to a Protective Order issued by the Southern District of New York. The government suggests that the subpoena

request be presented to the Southern District of New York for adjudication, or at a minimum, this court should require that the subpoena be issued subject to the same protective order.

We do not agree that the subpoena request should be presented to the Southern District of New York or that we issue the subpoena subject to the same protective order that is in place in the Southern District of New York. If we were to do that, this court would lose the ability to quash or modify the subpoena because it would be issued by a court in another jurisdiction, so to retain control over flow of information in the instant action, we will not follow the government's suggested course of action.

However, we find that the defense has not shown that they are requesting the subpoena for anything other than purposes of impeachment, thus we will grant the government's motion to quash the subpoena directed to ART.

"Impeachment material, which is not admissible for any evidentiary purpose prior to trial, is not subject to subpoena under Rule 17 until after testimony at trial. United States v. Tillman, 2009 U.S. Dist. LEXIS 96922, *2 WL CITE, (W.D. Pa. October 20, 2009) (Lancaster, J), citing Cutherbertson, 651 F.2d at 195 ("naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule." Information sought for the sole

purpose of impeachment is not evidentiary, and therefore not subject to pretrial disclosure under Rule 17(c). See id.

Defendants have not proffered any reasons that the deposition transcripts would be admissible as evidence. It appears to the Court that their only arguments are that the deposition transcripts would be used for impeachment.

Defendants first argue that the transcripts would be admissible under Fed. R. Ev. 801(d)(1). This rule relates to prior inconsistent statements by a witness, thus the defendants first argument fails as being a request for impeachment materials.

Defendants next argue that if a witness can no longer recall some of their testimony, the deposition transcripts would be admissible under Fed. R. Ev. 803(5), recorded recollection. This argument not persuasive and the court does not find that this is sufficient reason to believe that the deposition transcripts would used for anything other than impeachment.

Finally, the defendants argue that if they or the government should call an ART deponent who is unavailable, the deposition testimony would be available under Fed. R. Ev. 804(b)(1) as a hearsay exception. This case has not been set for trial, and we believe it is premature for defendants to presume that the witnesses in the ART depositions will be needed, yet unavailable. For these reasons we will grant the motion to quash the subpoenas for the ART witnesses and information at this time.

**Requested subpoena to Buchannan, Ingersoll & Rooney, P.C.**

The government asserts that any documents the Rigas' request from BIPC are subject to attorney-client privilege and the work product doctrine. This may be so but the government does not have standing. The government cannot claim privilege on behalf of BIPC. The attorney-client privilege belongs to the client, either the Rigas', or Adelphia or related companies. See In re Impounded Case (Law Firm), 879 F.2d 1211, 1213 (3d Cir. 1989). The work product privilege belongs to the law firm, BIPC. See id at 1214.

Thus, we will issue to the subpoena to BIPC with the caveat that BIPC has the option to comply with the subpoena or apply to this court for Rule 17(c) relief.

**3. CONCLUSION**

We will grant the government's motion to quash the subpoena directed toward the Adelphia parties. The Rigas' may submit a new proposed subpoena directed toward the Adelphia parties that complies with Judge Jones' June 14, 2011 Protective Order.

We will grant the government's motion to quash the subpoena directed toward ART.

We will deny the government's motion to quash the subpoenas directed toward BIPC. We will order the subpoenas be issued to this non-party with a copy of this memorandum and order. BIPC may then comply or apply to this court for relief.

/s William I. Arbuckle
William I. Arbuckle
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 4:05-CR-402 |
| | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| JOHN RIGAS and | : | Magistrate Judge William I. Arbuckle |
| TIMOTHY RIGAS, | : | |
| | : | |
| Defendants | : | |

**O R D E R**

October 31, 2011

NOW THEREFORE, in accordance with the accompanying memorandum, it is hereby ordered that Defendants' "Motion for Issuance of Subpoenas for Production of Documents in Advance of Trial Under Federal Rule of Criminal Procedure 17(C)" (Document # 166) is GRANTED in part and DENIED in part.

1. The Defendant's request for subpoenas to the Adelphia parties is denied. The government's motion to quash the subpoena directed toward Adelphia Communications Corporation; Fried, Frank, Harris, Shriver & Jacobson, LLP; Boies, Schiller & Flexner, LLP; Covington & Burling, LLP; Adelphia's former independent directors: Erland Kailbourne, Les Gelber, Dennis Coyle and Peter Metros; and Adelphia's Replacement Independent Directors: Rodney W. Cornelius and Anthony T. Kronman is GRANTED without prejudice to the right of the

Defendant's to file a new request for subpoena consistent with Judge Jone's earlier protective order (Document #150 at 7).

2. The Defendant's request for subpoena to ART is denied. The government's motion to quash the subpoenas directed toward the Adelphia Recovery Trust is GRANTED without prejudice to the right of the Defendants to request the information coupled with a showing that the information is not for impeachment purposes.

3. The Defendant's request for a subpoena directed toward Buchannan, Ingersoll & Rooney, P.C. is GRANTED and the government's motion to quash the subpoena directed to BIRPC is DENIED. Defendants are directed to serve a copy of the memorandum opinion accompanying a copy of this order along with their subpoena.

a. The application for subpoena suggests that the records of BIPC relate to "an approximately 20-year representation of the Rigas', their private companies, and Adelphia" that are not in electronic format but are "warehoused." The potential relevance of these documents and the defense need to review them in advance of trial is set forth persuasively in paragraph 15 of their Motion requesting Subpoenas (Document 166). The issue of attorney client privilege and waiver of that privilege as it relates to Adelphia and related Companies files (as opposed to the Rigas' personal files) is not so clear. Given the Court's understanding that

these files are voluminous the suggestion of the Rigas' that they be permitted to inspect and copy on site rather than have a warehouse of documents delivered to the court for review is a sensible one. Rule 17(c) does not expressly provide for an off site inspection. There are undoubtedly security and confidentiality concerns that will have to be addressed. The Court's issuance of this subpoena is therefore specifically without prejudice to the right of any person aggrieved by the suggested procedure to challenge the subpoena under Rule 17(c)(2) or on other appropriate grounds by the filing of a timely motion with this Court.

4. The clerk is directed to issue a subpoena for BIPC to defendants in accordance with Fed. R. Crim. P. 17(c). When filling out the subpoena, defendants are directed to write in "see attached memorandum and order" in the 'place of appearance' box.

/s William I. Arbuckle
William I. Arbuckle
United States Magistrate Judge